EUGENE COMPO, PROSECUTOR, v. WALTER D. VAN RIPER, JUDGE, ETC., RESPONDENT.

Argued May 19, 1932—Decided May 20, 1932.

Before Justices PARKER, CAMPBELL and LLOYD.

For the prosecutor, *Edward R. McGlynn.*

For the respondent, *Joseph L. Smith,* prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. Compo, the prosecutor, was convicted of murder in the first degree on June 5th, 1931, and sentenced to death and warrant issued accordingly. After the taking out and determination of a writ of error, and affirmance of the judgment of the trial court, followed by a second death warrant, then by an application for clemency to the Court of Pardons which was unsuccessful, and an application for a new trial on the ground of a newly discovered evidence and fraud which was likewise unsuccessful, the trial judge on May 2d, 1932, signed a new warrant for execution in the form provided by the statute, requiring the principal keeper of the state prison to execute the death sentence during the week beginning June 5th, 1932. Prosecutor attacks this order as unwarranted by law, and asks that it be brought before us to be set aside. A prior application made to the Chief Justice was denied by him.

This is the third death warrant signed in the case. The first was on June 5th, 1931, for execution during the week of July 12th. That was superseded by the writ of error. The second was on May 2d, 1932, after the affirmance of the conviction and before the hearing in the Court of Pardons. The first point now made is that when the third death warrant was signed there was nothing before the trial court to indicate that the second warrant had not been executed, and that, therefore, the prosecutor, so far as that court was concerned,

was legally dead. We think this ill-founded in law and without support in fact. We see no reason for a conclusive presumption or indeed any presumption, that a condemned murderer is "legally dead" because the time fixed in the warrant for his execution has passed. The statute itself (*Pamph. L.* 1906, *p.* 112, § 8; *Comp. Stat., p.* 1861) calls for an official certificate that the warrant has been executed. It would be as reasonable to say that the condemned should be considered legally alive until that certificate has been made. But casuistry of this kind serves no useful purpose, in view of the fact that the man is still alive, and that the trial court heard a motion for a new trial on April 7th and 11th, which was undetermined when the time fixed by the second warrant expired on April 23d, 1932, and decided adversely on April 30th; the governor having signed on April 20th a reprieve expiring May 2d. It is intimated that the warrant of May 2d was issued by the trial judge "without any proof being taken." Just what "proof" should have been taken is not clear. The moving papers contain a copy of the governor's reprieve, addressed to the keeper and dated April 20th. The prisoner's counsel doubtless was fully aware of this, and there is nothing to show that the trial court was not apprised of it. The fact that the third warrant is dated May 2d cannot well be a mere coincidence.

The second point is that the governor had no power to make the reprieve of April 20th, that it had no validity and should have been ignored by the keeper of the state prison; that the week of April 17th set for the execution was illegally allowed to pass, and having so passed the third death warrant of May 2d should be set aside.

This depends on two propositions: 1. That the reprieve was nugatory. 2. That the execution being delayed by such nugatory act, cannot now be had at all.

Without conceding the first proposition, we think it sufficient to deal with the second, which we deem wholly without substance.

The provisions of the statute of 1906, *ubi supra,* bearing on this matter are as follows:

"If the execution of the sentence within the time appointed shall be prevented by, or in consequence of, proceedings instituted to test the validity of the conviction, then, on termination of such proceedings, if the conviction be not set aside, it shall be the duty of such judge to make out, sign and deliver another warrant as aforesaid.

"If the execution of the sentence within the time appointed 'be prevented by any other course,' it shall be the duty of such judge as soon as such course ceases to exist to make out, sign and deliver another warrant as aforesaid."

The second paragraph is the one that bears on the present situation; and the real question is what meaning attaches to the words "any other course" and "such course." It may well be surmised that the draftsman used the word "cause," and that the error in transcribing escaped notice. But this hypothesis need not be relied on, because it is clear to us that a "course" which "ceases to exist" and which "prevents the execution of the sentence within the time appointed" is some act or occurrence, or perhaps a series of them, which results in a failure to execute the sentence, other than a proceeding to test the validity of the conviction. The language is general, and would fairly include an escape of the prisoner followed later by a recapture; or a breakdown of the electrical appliances requiring weeks to repair; or a fire in the state prison necessitating temporary removal of the inmates; or the refusal of the principal keeper to obey the warrant; or a forged reprieve; or, as in this case, a genuine document intended as a reprieve but assumed for present purposes to be invalid as such. The word "course" is obviously ill chosen, but the context is too clear to leave room for doubt. Whatever it be, apart from a legal review, that prevents the execution, when it ceases to exist as such preventive, a new warrant is to be issued by the judge.

It follows that the warrant sought to be brought here by *certiorari* was lawfully issued and is a lawful warrant; and *allocatur* is therefore denied.